# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>iPhone model A2649 with a cracked screen, and the thumb drive containing Cellebrite image of the same iPhone, as described in Attachment A | )<br>)<br>)    Case No. 6:25-mc-297<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

iPhone model A2649 with a cracked screen, and the thumb drive containing Cellebrite image of the same iPhone, currently in law enforcement custody, as described in Attachment A hereto

located in the _____ District of \_\_\_\_\_Oregon\_\_\_\_\_, there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 933(a)(1) and (3) | Conspiracy to Traffick Firearms |
| 18 U.S.C. § 922(g)(1) | Felon in a Possession of Firearm |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

 

Heidi Wallece, Special Agent ATF, via Telephone
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone at 2:05 p.m. a.m./p.m. *(specify reliable electronic means)*.

Date: March 17, 2025

*Andrew Hallman*
*Judge's signature*

City and state: Eugene, Oregon     Andrew D. Hallman, United States Magistrate Judge
*Printed name and title*

STATE OF OREGON, ss:            AFFIDAVIT OF HEIDI WALLACE

**Affidavit in Support of an Application
for a Search Warrant for a Phone and Thumb drive with Cellebrite image**

I, Heidi Wallace being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.  I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Eugene Field Office. I have been an ATF Special Agent since 2003. As such, I have investigated numerous violations of federal law, including violations that have involved the use of computers and the internet. Prior to becoming a Special Agent, I worked at the ATF laboratory in Ammendale, Maryland, for a year and a half as an Integrated Ballistics Identification System (IBIS) Specialist. I have a bachelor's degree in Sociology from the University of Michigan, and I have completed the Federal Law Enforcement Training Center Criminal Investigators program, the ATF New Professional Training for Special Agents program, and the ATF Advanced Interstate Nexus of Firearms and Ammunition course. I have also received training in social media and its use in crimes especially relating to gun and drug crimes. I have investigated numerous violations of federal firearm and narcotics laws, including violations that have involved the use of phones and the internet and how it relates to the possession and sale of firearms. I have also investigated narcotics and firearm cases where subjects have used their phones to conduct drug and firearm trafficking transactions.

2.  I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search and examination of one (hereinafter, "Phone") and the phone download image previously seized from Daniel Knapp, which is currently stored, in custodial law enforcement possession, at the ATF office in Eugene, Oregon. The Phone and Cellebrite extraction are described in Attachment A hereto, and this

warrant application seeks the extraction of electronically stored information from the Phone and Cellebrite extraction, as described in Attachment B hereto. As set forth below, I have probable cause to believe and do believe that the items set forth in Attachment B constitute evidence of violations of Title 18 U.S.C. §§ 933(a)(1) and (3) and Title 18 U.S.C. § 922(g)(1).

3.

This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Laws

4. Title 18 U.S.C. §§ 933(a)(1) and (3) provides, in pertinent part that it shall be unlawful to knowingly and intentionally combine, conspire, confederate and agree with each other to traffic in firearms by knowingly and intentionally ship, transport, causing to be transported and otherwise disposing of one or more firearms to a recipient in or otherwise affecting commerce, knowing or having reasonable cause to believe that the use, carry or possession of the firearm by the recipient would constitute a felony.

5. Title 18 U.S.C. § 922(g)(1) provides that it shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce,

any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

**Statement of Probable Cause**

5. In December 2023 over 100 firearms, a million dollars in cash, gold, and silver were stolen from a large underground vault located in Bandon, OR. Some of the firearms have since been recovered by law enforcement in Oregon and California with the first known recovery occurring on December 27, 2023, in Coos Bay, OR. Firearms from the burglary were transported to California, with the first firearm recovered in California on or about January 31, 2024.

6. Throughout the investigation into the trafficking of stolen firearms, I have interviewed numerous individuals and traced numerous firearms that have been recovered by law enforcement. From these interviews it was determined that Matthew Knapp, Daniel Knapp, Kyle Vanalstine, and William (Travis) Cutlip were involved in the theft of the cash and firearms from the vault. It was also discovered that a second burglary had occurred at the same vault. During the second burglary, firearms, cash, and ammunition were stolen.

7. Text messages obtained through the investigation showed Daniel Knapp sent a text message to Jesse Hernandez on December 20, 2023, telling him that the vault was open and full of guns. In an additional message to Hernandez, he also mentioned that he wanted "a silencer off one of the guns. And maybe some ammo." Multiple silencers were stolen during the burglary. It was also determined that Daniel Knapp and Travis Cutlip paid Kyle Vanalstine for his assistance in the burglary and to keep quiet about who was involved in the burglary.

8. Text messages between Matt Knapp and Daniel Knapp were also obtained. Those messages showed a discussion between Matt and Daniel after the burglary when Daniel thought Matt was telling on them for committing the burglary. These messages were sent on January 2, 2024. By looking at additional messages within Matt Knapp's cell phone, which were obtained through consent in this case, I know that Daniel used his phone to communicate about the burglary and thus firearms.

7. On September 19, 2024, Matthew Knapp, Daniel Knapp, Kyle Vanalstine and William (Travis) Cutlip were indicted for conspiracy to traffick firearms, in violation of Title 18 U.S.C. §§ 933(a)(1) and (3). Daniel Knapp was also indicted on one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

8. After receiving the arrest warrants, investigators made multiple attempts to locate Daniel Knapp at his residence. The FBI attempted to locate him using the phone number previously known to law enforcement at the time of the burglary. The phone number from that account had been closed.

9. On December 4, 2024, ATF, Coos County Sheriff Office with assistance from Curry County arrested Daniel Knapp at his residence in Port Orford, OR. During the arrest, Knapp had a small baggie of suspected methamphetamines located in his front pocket. The meth later field tested positive for methamphetamines and weighed approximately 7.2 grams with packaging. Also located on Knapp was his wallet, a silver chain and the Phone. It was unclear whether this was the same phone that Daniel Knapp used during the commission of the underlying offense. These items were taken into ATF custody and transported back to Eugene along with Daniel Knapp.

**Page  4  – Affidavit of Heidi Wallace**

10. Based on locating the methamphetamines on Knapp during the arrest, Coos County Sheriff Office Detective Davis drafted a search warrant for Knapp's residence. The warrant was approved the same day and executed during the evening of December 5, 2024. When officers executed the warrant, the residence looked to have been disturbed prior to their execution. An empty soft sided gun case was located sitting on top of the mattress in the bedroom area and there were multiple empty plastic bags that appeared to have stored cash that lay open in the living room area. There was different dollar denomination written on each of the bags. Law enforcement also located multiple rounds of ammunition inside the trailer. Ammunition is not illegal for felons to possess under Oregon state law. Daniel Knapp is a convicted felon and not allowed to possess firearms or ammunition under federal law. Law enforcement also noted multiple security cameras inside and outside the residence. They did not locate a central DVR inside the residence and therefore concluded that the cameras were probably connected to an App on Knapp's cell phone.

11. I spoke to Det. Davis about what law enforcement encountered during the execution of the search warrant, I informed him that I had possession of Knapp's cell phone. I also advised that it was placed in a faraday bag to mitigate any attempts to remotely contact the Phone while in my custody. The Phone was also placed in airplane mode and plugged into an external battery inside the bag to keep it charged, which are all suggested actions that I had learned through speaking with forensic phone analysts about their experience in cellphone technology.

12. On December 10, 2024, Det. Davis applied for and was granted a search warrant for the Phone. This search warrant demanded the search for photos or videos depicting the

Page 5 – Affidavit of Heidi Wallace

possession, use or delivery of controlled substance or firearms on a video surveillance cellphone application for the dates of December 4 and 5. Det. Davis provided the cellphone to FBI Special Agent Deane Davis to use Cellebrite to create a forensic image of the cellphone.

13. On or about December 19, 2024, Agent Davis returned the cellphone to Det. Davis with a copy of the Cellebrite image.

14. Based on my training and experience, cellphones allow you to take screenshots or video clips from longer recordings and display them across various cellphone applications. Some applications restrict this, the majority of which I have found to be banking applications. I know that these screen shots can be sent via text messages, emails, or used on many messaging platforms. Surveillance camera recordings can be held by the owner for various amounts of dates depending on the storage capacity of a DVR or the storage capacity per customer controlled by a company usually for a monthly or yearly fee. This would allow screenshots that could be from video captured on a security camera on one day, to be accessed at a later date and texted or emailed for various purposes on additional dates.

15. On January 13, 2025, Det. Davis told me that he was going to request an additional state warrant to search the previous downloaded Cellebrite image of the Phone. This included messaging apps, email, security camera notifications messages and images stored of the security camera footage that could have been transmitted to Knapp's phone through screenshots of security camera movement or alerts from Daniel Knapp's residence during December 4 and 5.

16. On February 10, 2025, Det. Davis applied for and received a state search warrant to search the thumb drive that contained the previously downloaded Cellebrite image of the Phone. Specifically, he was able to look for "evidence of the crime's delivery and possession of

a controlled substance such as: communication such as texts, communication through application, voicemails, emails with photos showing the possession of a Controlled Substance, as well as identifying information for individuals participating in such communications."

17. Det. Davis executed the search warrant by accessing the thumb drive containing the phone Cellebrite image. He searched for "screenshot" within the phone image to see if they depicted video clips involving screenshots from December 4 and 5 of controlled substance content captured on Daniel Knapp's security video cameras.

18. The first item that came up based on his search, was a long text thread between Daniel Knapp and a phone number beginning with the 916-area code out of California. This message string included information that referenced the victim, Matt Knapp, Travis Cutlip, firearms how Daniel Knapp had not been arrested for the burglary, an ex-girlfriend taking "screenshots" of text messages that were on someone's cellphone, cash from burglary being stored in a CD or money account by Daniel Knapp, and how Jesse Hernandez showed messages from Daniel Knapp to the police. All of these subjects being mentioned along with firearms and the burglary victim in the same message, led Det. Davis to believe there was additional information about the aftermath of the burglary and trafficking of firearms and location of cash from the burglary in the Cellebrite image. Det. Davis also noted that this message was sent in July 2024.

18. At this point Det. Davis stopped his review of the Cellebrite download and notified me of the information located.

19. This string of messages was sent to a phone number with a 916-area code, which covers the area around Sacramento, California. During the investigation into the trafficking of

Page 7 – Affidavit of Heidi Wallace

stolen firearms from the burglary, multiple firearms have been seized by law enforcement in California.  I know that Daniel Knapp knew firearms were taken from the victim and even asked for one in particular from this stolen collection of firearms over text message.  After executing two search warrants at his residence and one for his vehicle, to this date no firearms taken from the burglary have been located in Daniel's possession, thus it is possible he stored them elsewhere or sold them.

20. On February 12, 2025, the FBI office in Medford received a call from a female claiming to know information about Daniel Knapp.  She stated that her friend knows where the money that Daniel Knapp stole from the burglary was located.  She stated that $60,000 went to two women and the rest is in a safe deposit box out of state.

21. The Phone and copy of the Cellebrite download of the Phone are currently in storage in the evidence room of the ATF Eugene Field Office.  In my training and experience, I know that the Phone has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Phone and downloaded image of the Phone first came into the possession of the ATF.

22. Based on my training and experience and knowledge of this case, I believe the Phone and the Cellebrite image contains evidence of Knapp's firearms trafficking.  As indicated above, he used text messaging on his phone to contact other co-conspirators regarding the burglary and has ties to California where some of the firearms have been recovered.  Thus, I have probable cause to believe that Knapp used his phone to conduct his criminal activity, communicating with co-conspirators involved in the stealing of firearms and that the subject phone contains evidence of said violation.

**Page 8 – Affidavit of Heidi Wallace**

23.     Based on my training and experience, a wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; recording, storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet,[1] including the use of apps.[2]  Wireless telephones may also include a global positioning system ("GPS") technology for determining the location of the device.

24.     Based on my training, experience, and research, I know that the Phone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, internet search engines, Apps that can store money and text messages that can contain data and photos.  In my training and experience, examining data stored on

---

[1]  The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

[2]  Apps is an abbreviation for applications.  An app is a self-contained program or piece of software designed to fulfill a particular purpose.  An app can run on the Internet, on a computer, on a cell phone, or on other electronic devices.

Page  9 – Affidavit of Heidi Wallace

wireless telephones can uncover, among other things, evidence that reveals or suggests who possessed or used the phone, how the phone was used, and the purpose of its use.

25. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the Phone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the Phone because, based on my knowledge, training, and experience, I know:

   a. Phones can store information for long periods of time, including information viewed via the Internet. Files or remnants of files can be recovered with forensic tools months or even years after they have been downloaded onto a phone, deleted, or viewed via the Internet. Electronic files downloaded to a phone can be stored for years at little or no cost. When a person "deletes" a file, the data contained in the file does not actually disappear, rather that data remains on the phone until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the phone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, the operating system may also keep a record of deleted data.

   b. Wholly apart from user-generated files, the Phone may contain electronic evidence of how it has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating systems or application operations, and file system data structures.

   c. Similarly, files that have been viewed via the Internet are sometimes

automatically downloaded into a temporary Internet directory or "cache."

        d.     Data on the Phone can provide evidence of a file that was once on the Phone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Systems can leave traces of information on the Phone that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the Phone that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, including SD cards or other flash media, and the times the Phone was in use. File systems can record information about the dates files were created and the sequence in which they were created.

        e.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

        f.     A person with appropriate familiarity with how the Phone works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the Phone was used, the purpose of its use, who used it, and when.

        g.     The process of identifying the electronically stored information necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on the Phone is evidence may depend on other information stored on the Phone and the application of knowledge about how a Phone functions. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

h.      Further, in order to find evidence of how the Phone was used, the purpose of its use, who used it, and when, the examiner may have to establish that a particular thing is not present on the Phone.

26.     *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Phone consistent with the warrant.   The examination may require authorities to employ techniques, including imaging the Phone and computer-assisted scans and searches of the entire Phone that might expose many parts of the device to human inspection in order to determine whether it constitutes evidence as described by the warrant.

27.     The initial examination of the Phone will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.   If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant.   The government shall complete this review within 180 days of the date of execution of the warrant.   If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

28.     If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Phone or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.   Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the

warrant, through the conclusion of the case.

29. If an examination is conducted, and it is determined that the Phone does not contain any data falling within the ambit of the warrant, the government will return the Phone to its owner within a reasonable period of time following the search and will seal any image of the Phone, absent further authorization from the Court.

30. If the Phone contains evidence, fruits, contraband, or is an instrumentality of the crime, the government may retain the Phone as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Phone and/or the data contained therein.

31. The government will retain a forensic image of the Phone for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

32. *Manner of execution.* Because this warrant seeks only permission to examine a device and the Cellebrite image already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/ / /

/ / /

**Page 13 – Affidavit of Heidi Wallace**

**Conclusion**

33.     Based on the foregoing, I have probable cause to believe, and I do believe, that the Phone described in Attachment A contains evidence of firearms trafficking in violations of, Title 18, United States Code, Sections 933(a)(1) and (3) and Title 18, United States Code, Section 922(g)(1) as set forth in Attachment B.   I therefore request that the Court issue a warrant authorizing a search of the Phone and the Cellebrite image of the phone described in Attachment A for the items listed in Attachment B and the seizure and examination of any such items found.

34.     Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Gavin Bruce, and AUSA Bruce advised me that in his opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

*By phone pursuant to Fed. R. Crim. P. 4.1*
HEIDI WALLACE
Special Agent ATF

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 2:05 p.m. a.m/p.m. on March 17, 2025.

*Andrew Hallman*
ANDREW D. HALLMAN
United States Magistrate Judge

Page 14 – Affidavit of Heidi Wallace

## ATTACHMENT A

## Phone and Thumb Drive to Be Searched

The phone to be searched is an iPhone model A2649 with a cracked screen, and the thumb drive containing Cellebrite image of the same iPhone, currently located in law enforcement custody within the District of Oregon.

## ATTACHMENT B

### Items to Be Seized

1. All records on the Phone described in Attachment A that relate to violations of 18 U.S.C. §§ 933(a)(1) and (3) and 18 U.S.C. § 922(g)(1) since December 1, 2023, including:

   a. All messages and communications, whether conducted through an App or over the phone's specific messaging platform, relating to firearms trafficking transactions, the December 2023 burglary, or the possession of firearms.

   b. Lists of contacts and related identifying information.

   c. Types, amounts, and prices of firearms trafficked as well as dates, places, and amounts of specific transactions.

   d. Any and all photos

   d. Any information related to sources of firearms and ammunition (including names, addresses, phone numbers, or any other identifying information).

   e. Any information recording Daniel Knapp's schedule or travel from December 1, 2023, to December 4, 2024.

   f. All bank records, checks, credit card bills, account information, and other financial records.

   g. Any and all records and information relating to trafficking of firearms or the possession of firearms.

2. Evidence of user attribution showing who used or owned the Phone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved

usernames and passwords, documents, and browsing history.

    3.    Records evidencing the use of the Internet, including:

        a.    Records of Internet Protocol addresses used.

        b.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

        c.    Records of data storage accounts and use of data storage accounts.

    4.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## Search Procedure

    5.    The examination of the Phone and Cellebrite image may require authorities to employ techniques and computer-assisted scans and searches of the entire Phone that might expose many parts of the Phone to human inspection in order to determine whether it constitutes evidence as described by the warrant.

    6.    The initial examination of the Phone and Cellebrite image will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it

Page 2 – Attachment B

may seek an extension of the time period from the Court.

7.     If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Phone or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8.     If an examination is conducted, and it is determined that the Phone does not contain any data falling within the ambit of the warrant, the government will return the Phone to its owner within a reasonable period of time following the search and will seal any image of the Phone, absent further authorization from the Court.

9.     If the Phone contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Phone as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Phone and/or the data contained therein.

10.    The government will retain a forensic image of the Phone for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Page 3 – Attachment B**